UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-62322-WILLIAMS/VALLE

ALAN REDDISH,

    Plaintiff,

v.

AVRAHAM OVADIA, *et al.*,

    Defendants.

_____/

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

**THIS MATTER** is before the Court on Defendants' Avraham Ovadia, a/k/a Avi Ovadia d/b/a Daytona Paradise 770, and Elephant Group Hotel 77 Princess Inc., f/k/a Elephant Group Hotel 7 Inc., a/k/a Elephant Group Hotel 77 (collectively, "Defendants") Rule 12(b)(6) Motion to Dismiss Plaintiff's Complaint (ECF No. 8) (the "Motion"). United States District Judge Kathleen Williams has referred the Motion to the undersigned for a Report and Recommendation. *See* (ECF No. 10). Accordingly, having reviewed the Motion, Plaintiffs' Memorandum in Opposition (ECF No. 9), and being otherwise duly advised in the matter, the undersigned respectfully recommends that the Motion be **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

### I.  BACKGROUND

**A. The Complaint**

This case is one of many filed by Plaintiff, who is a self-admitted tester of compliance with the Americans with Disabilities Act ("ADA").[1]  Compl. (ECF No. 1 ¶ 7). Plaintiff's single-count

---

[1] A Pacer search for Plaintiff Alan Reddish in the Southern District of Florida revealed 28 filed cases, in many of which Plaintiff was represented by the same attorney as in this case. In those

1

Complaint seeks injunctive relief, attorney's fees, and costs from Defendants, who own or operate Daytona Paradise, in Daytona Beach, Florida (the "Hotel") for alleged noncompliance with the ADA.  *See generally* (ECF No. 1).  Specifically, Plaintiff alleges that he is confined to a wheelchair due to his primary lateral sclerosis and Parkinson's Disease, and thus qualifies as a disabled person within the meaning of the ADA.  (ECF No. 1 ¶ 6).

The Complaint alleges that Defendants operated or maintained a website for the Hotel at IP address www.daytonaparadise770.com (the "Website").  *Id.* ¶¶ 1, 2, 18.  The Complaint further alleges that the Hotel is a place of public accommodation.  *Id.* ¶ 17.  Prior to filing the instant lawsuit, Plaintiff visited the Website "to learn about accessible features [of the Hotel] . . . and to see if he could reserve an accessible room at the Hotel online."  *Id.* ¶ 20.  During that process, Plaintiff discovered that Defendants' Website did "not provide him with any meaningful accessibility information at all or allow for the reservation of an accessible room (with known accessibility features)" in the same manner as non-accessible ones, in violation of 28 C.F.R. § 36.302(e)(1).  *Id.* ¶¶ 13-22, 24.  Plaintiff alleges that these violations discriminated against him by denying him equal access and enjoyment of the Hotel's services offered on the Website.  *Id.* ¶ 26.

### B. The Motion

In the Motion, Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6).  *See* (ECF No. 8).  Defendants summarily argue that: (i) the Website is not a physical, concrete structure within the meaning of the ADA, and Plaintiff has not alleged the required "nexus" between the Website and the Hotel; (ii) the Website has been deactivated, so that

---

cases, however, the Court had no occasion to address the sufficiency of Plaintiff's allegations in a motion to dismiss.

Plaintiff's Complaint is effectively moot; and (iii) Plaintiff lacks standing because the Complaint fails to allege an injury-in-fact. *Id.* at 2, 5. Relatedly, Defendants seek dismissal of Plaintiff's allegations regarding unnamed third-party reservation websites, arguing that Plaintiff failed to allege how Defendants are "legally responsible for [the third-party website] content." *Id.* at 2 n.1.

Plaintiff does not challenge the accessibility of the Website itself, but the contents of the Website, which allegedly did not provide the ADA-required information that would allow Plaintiff to determine the accessible features of the Hotel and to reserve an accessible room. (ECF No. 9 at 2, 6). Plaintiff argues that websites in general are subject to the ADA and its regulations (*id.* at 8-9) and that hotel websites in particular are subject to 28 C.F.R. § 36.302(e)(1) and Department of Justice guidance (*id.* at 9-15). Lastly, as to third-party websites, Plaintiff argues that "[28 C.F.R. § 36.302(e)(1)] does not impose liability on third-party booking systems," but on the owner, lessor or operator of "a place of public accommodation." *Id.* at 17; *see* 42 U.S.C. § 12182(a).

## II. LAW AND ANALYSIS

### A. Applicable Legal Standards

#### 1. *The ADA*

"The ADA covers three main types of discrimination, each of which is addressed in one of the statute's three main subchapters: Title I prohibits discrimination in private employment; Title II prohibits discrimination by public entities (state or local governments); and Title III prohibits discrimination by a 'place of public accommodation,' which is a private entity that offers commercial services to the public." *A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018).

Generally, Title III of the ADA prohibits discrimination on the basis of a disability by places of public accommodation. 42 U.S.C. § 12182(a). To this end, the ADA requires that an

individual with a disability be afforded "the most integrated setting appropriate to the needs of the individual." 42 U.S.C. § 12182(b)(1)(B). Further, the ADA defines discrimination to include "the failure to make reasonable modifications in policies, practices, or procedures . . . necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities" and "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently. . . because of the absence of auxiliary aids and services. . . ." *Id.* § 12182(b)(2)(A)(ii)-(iii).

28 C.F.R § 36.302(e)(1) (the "Regulation") governs the modifications in policies, practices, or procedures for hotel reservations. The Regulation requires the following:

> (e)(1) Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party—
>
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
>
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
>
> (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
>
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
>
> (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

28 C.F.R § 36.302(e)(1)(i)-(v).

To prevail on a Title III ADA discrimination claim, a plaintiff must sufficiently demonstrate that: (1) he is a disabled individual; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff on the basis of the disability within the meaning of the ADA. *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011); *see also Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, No. 17-CV-14363-MIDDLEBROOKS, 2018 WL 3387679, at *2, *5 (S.D. Fla. May 22, 2018) (citing *Norkunas*, 444 F. App'x at 416); *see also Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (setting forth analogous elements for claims against public entities under Title II of the ADA). To date, the Eleventh Circuit has not squarely addressed whether a website is itself "a place of public accommodation" under the ADA.[2]

2. *Standing*

Article III of the United States Constitution limits the jurisdiction of federal courts to hear actual cases or controversies. U.S. Const. art. III, § 2; *Norkunas*, 444 F. App'x at 415. Accordingly, the Court must first assure itself that a litigant has standing to bring an action, including one for injunctive relief. *Norkunas*, 444. F. App'x at 415.

Motions to dismiss based on lack of standing attack the Court's subject matter jurisdiction and are therefore considered under Rule 12(b)(1). Where the jurisdictional attack is based on the

---

[2] Nonetheless, the Court has found that tangible and intangible barriers to accessing a place of public accommodation fall within Title III of the ADA. *See J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 925 (11th Cir. 2016); *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002). For either type of barrier, the Court has required the showing of some "nexus" between the alleged violation and a physical, concrete place of public accommodation. *Rendon*, 294 F.3d at 1284 (holding that plaintiffs demonstrated a nexus between telephone screening system and physical theater where the game show was recorded); *Haynes v. Dunkin' Donuts LLC*, 741 F. App'x 752, 754 (11th Cir. 2018) (holding that plaintiff sufficiently stated a claim by pleading that the alleged inaccessibility of the website denied plaintiff access to the services of the shops available to others on defendant's website").

face of the pleadings, as here, the Court determines whether the plaintiff sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's complaint are taken as true. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

To establish standing, a plaintiff must show that he has suffered: "(1) an injury in fact, (2) that is fairly traceable to the defendant; and (3) that is likely to be redressed by a favorable decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Furthermore, because Plaintiff seeks injunctive relief, he must also show a likelihood of future injury.[3] *Lujan,* 504 U.S. at 560-61. "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Shotz*, 256 F.3d at 1081 (citing *Wooden v. Board of Regents of Univ. Sys.*, 247 F.3d 1262, 1284 (11th Cir. 2001)).

### 3. Mootness

Mootness, like standing, focuses on the Court's jurisdiction to adjudicate cases and controversies. In essence, a case is moot when it is brought too late or "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Because mootness attacks the Court's subject matter jurisdiction, it is also considered under Rule 12(b)(1). *Covenant Christian Ministries, Inc. v. City of Marietta, Ga.*, 654 F.3d 1231, 1239 n.4 (11th Cir. 2011).

---

[3] Injunctive relief is available to remedy discrimination on the basis of disability under the ADA. 42 U.S.C. § 12188(a)(2); 42 U.S.C. § 2000a-3(a). Specifically, 42 U.S.C. § 2000a-3(a) provides that "a civil action for preventive relief, including an application for a permanent or temporary injunction . . . may be instituted by the person aggrieved" whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited. 42 U.S.C. § 2000a-3(a).

### 4. Rule 12(b)(6) Standard

To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court's review of the sufficiency of the Complaint is limited to the allegations presented in the Complaint. *See GSW, Inc. v. Long Cty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). Moreover, all factual allegations in the Complaint are accepted as true and all reasonable inferences are drawn in the Plaintiff's favor. *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citations omitted); *see also Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citations omitted).

Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555 (internal citations and quotations omitted). Conclusory allegations, unwarranted factual deductions, and legal conclusions masquerading as facts may result in dismissal. *U.S. ex rel. Keeler v. Eisai, Inc.*, 568 F. App'x 783, 792-93 (11th Cir. 2014) (citation omitted).

Moreover, courts conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). *Miracle 7, Inc. v. Halo Couture, LLC*, No. 13-61643-CV, 2014 WL 11696708, at *2 (S.D. Fla. Jan. 17, 2014) (citation omitted). "A court should first ask whether the pleading properly asserts 'well-pleaded factual allegations,' or instead merely asserts legal conclusions that are not entitled to the assumption of truth." *Id.* (citations omitted). If the complaint contains factual allegations that are well-pled, the court should assume their veracity, and then move to the next step and ask whether the factual allegations "plausibly give rise to an

entitlement to relief." *Id.* Thus, where the pleading asserts non-conclusory factual allegations that, if true, would push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id.* (quoting *Twombly*, 550 U.S. at 570).

A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Twombly,* 550 U.S. at 555. Accordingly, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**B. Analysis**

*1. Plaintiff has Standing to Bring an ADA Claim*

As discussed previously, to establish standing, a plaintiff must show: (i) he has suffered an injury in fact; (ii) that is fairly traceable to the defendant; and (iii) that is likely to be redressed by a favorable decision. *Spokeo,* 136 S. Ct. at 1547; *Lujan,* 504 U.S. at 560-61. Injury in fact, in turn, requires Plaintiff to show that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual and imminent, not conjectural or hypothetical."[4] *Spokeo*, 136 S. Ct. at 1548 (citation omitted). In addition, because Plaintiff seeks injunctive relief, he must also show a likelihood of "real and immediate" threat of future injury. *Shotz*, 256 F.3d at 1081 (citing *Wooden*, 247 F.3d at 1284); *see also Lujan,* 504 U.S. at 560-61.

Defendant argues that the Complaint fails to allege an injury in fact for several reasons. (ECF No. 8 at 2, 5). First, Defendants argue that the Website is not a place of public accommodation, and thus, is not within the confines of the ADA. *Id.* at 2 ¶ 3, 3-4. Moreover,

---

[4] A "particularized' [injury] "must affect the plaintiff in a personal and individual way [while] a 'concrete' injury . . . must actually exist." *Id.*

Defendants argue that Plaintiff's allegation that he "intended to visit the hotel [but] the Website did not permit him to do so" is insufficient to establish standing because it fails to address: (i) "specifically how" the Website prevented him from doing so; and (ii) that the accessibility information was available "through multiple other means," such as telephoning or visiting the Hotel. *Id.* at 2, 5. Defendant's arguments, however, are unpersuasive; Plaintiff has sufficiently alleged both past injury and future injury to establish the requisite standing.

Turning first to Defendant's argument that the Hotel's Website is not a place of public accommodation under the ADA so that the entire Complaint should be dismissed, the Eleventh Circuit has not yet squarely addressed whether a website qualifies as a public accommodation under the ADA.[5] *Cf. Haynes v. Dunkin' Donuts LLC*, 741 F. App'x 752, 753 (11th Cir. 2018) (analyzing Title III complaint in the context of a website's compatibility with screen-reading software and noting that the website serviced a place of public accommodation and "the alleged inaccessibility of Dunkin' Donuts' website denies Haynes access to the services of the shops that are available on Dunkin' Donuts' website, which includes the information about store locations and the ability to buy gift cards online."). To date, District Courts that have analyzed the ADA's applicability to websites have focused their analysis on whether there is a "nexus" between a physical location (*i.e.*, a place of public accommodation such as a store or a hotel) and the purpose of the online website.

The lack of Eleventh Circuit precedent, together with the difficult "nexus" analysis, has resulted in seemingly inconsistent results regarding when a plaintiff has sufficiently alleged future injury to establish standing. *Compare Kennedy v. Floridian Hotel Inc.*, No. 1:18-CV-20839-UU,

---

[5] *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340 (S.D. Fla. 2017), which is currently pending before the Eleventh Circuit, may present that Court with an opportunity to decide the issue.

2018 WL 10601975, at *4-7 (S.D. Fla. May 15, 2018) (at the summary judgment stage, plaintiff's "vague and conclusory plans" to revisit the website failed to sufficiently allege future injury); *Buchholz v. Aventura Beach Assoc., Ltd.*, No. 17-23154-CIV-MORENO, 2018 WL 318476, at *3 (S.D. Fla. Jan. 5, 2018) (generally finding that plaintiff failed to allege a nexus between the hotel website and the physical property); *Bryan v. Florencia Park LLC*, No. 8:19-cv-1197-T-02AEP, 2019 WL 4394002 (M.D. Fla. Sept. 13 2019) (holding that the plaintiff had standing because the complaint adequately alleged a past and a future injury, but dismissing on other grounds); *and Price v. Escalante - Black Diamond Golf Club LLC*, No. 5:19-CV-22-Oc-30PRL, 2019 WL 1905865 (M.D. Fla. Apr. 29, 2019) (concluding that plaintiff failed to sufficiently allege future injury because he failed to allege a nexus between the website and the hotel's physical location) with *Parks v. Richard*, No. 2:20-CV-227-FtM-38NPM, 2020 WL 2523541, at *2-3 (M.D. Fla. May 18, 2020) (holding that plaintiff sufficiently alleged past and future injury and thus, had standing); *Poschmann v. Fountain TN, LLC*, No. 2:19-CV-359-FtM-99NPM, 2019 WL 4540438 (M.D. Fla. Sept. 19, 2019) (finding that plaintiff's allegation that he intended to revisit the website in the future was sufficient to establish future injury at motion to dismiss stage); *Kennedy v. Sai Ram Hotels LLC*, No. 8:19-CV-483-T-3JSS, 2019 WL 2085011 (M.D. Fla. May 1, 2019) (concluding that plaintiff's allegation that she intended to revisit the website in eight months was sufficient to establish future injury at motion to dismiss stage); *and Honeywell v. Harihar Inc.*, No. 2:18-CV-618-FtM-29MRM, 2018 WL 6304839 (M.D. Fla. Dec. 3, 2018) (holding that plaintiff's allegation that she intended to revisit the website was sufficient to establish future injury at motion to dismiss).

Here, even accepting Defendants' premise that the Website alone is not a place of public accommodation, the Complaint nonetheless alleges a clear nexus between the Website and

Defendants' Hotel, sufficient to survive a motion to dismiss. *See* (ECF No. 1 ¶¶ 17-19) (describing the Hotel as a place of accommodation and the Website as the platform facilitating online room reservations). The Complaint alleges that Plaintiff was unable to ascertain the accessible features of the Hotel because the Hotel's Website failed to identify them, which resulted in Plaintiff being deterred from visiting the Hotel. *Id.* ¶¶ 22-23. Moreover, the Complaint alleges that Plaintiff was unable to reserve an accessible room on Defendants' Website, although non-accessible rooms could be reserved online. *Id.* ¶¶ 20-21.

The essence of Plaintiff's claim is that he suffered an injury in fact because he was unable to reserve an ADA-accessible room through Defendants' Website. Here, where the Website was directly operated and controlled by Defendants specifically and exclusively to facilitate the use and enjoyment of the Hotel's physical property, Plaintiff has sufficiently alleged injury in fact. *See Fountain TN*, 2019 WL 4540438, at *2; *Harihar*, 2018 WL 6304839, at *3; *Coral Reef of Key Biscayne Developers, Inc.*, 2018 WL 3387679, at *3; *Florencia Park LLC*, 2019 WL 4394002, at *3 (all finding that plaintiff had sufficiently alleged an injury in fact and had standing under similar facts). At the motion to dismiss stage, these allegations are sufficient to demonstrate an actual and imminent, concrete and particularized injury.[6]

As well, Plaintiff has sufficiently alleged future injury for purposes of obtaining injunctive relief. The Eleventh Circuit has emphasized that past injury alone is insufficient to satisfy the requirement of a real and immediate threat of future discrimination for standing purposes. *See Shotz,* 256 F.3d at 1082. Here, however, the Complaint alleges that Plaintiff, who is a tester, plans

---

[6] "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *see also Floridian Hotel*, 2018 WL 10601977, at *6 (articulating the distinction between standing at the pleading stage, which is a more lenient threshold, versus later at summary judgment).

11

to return to the Website to learn about the accessible features of the Hotel and guestrooms and to determine whether his needs would be met there. *Id.* ¶ 25. Courts have found that this type of allegation is sufficient to support a future injury for standing purposes. *See, e.g.*, *Fountain TN*, 2019 WL 4540438, at *2; *Sai Ram Hotels LLC*, 2019 WL 2085011, at *3 (citing *Kennedy v. Gold Sun Hospitality, LLC*, No. 8:18-CV-82-T-33CPT (M.D. Fla. July 23, 2018) (Doc. 23 at 31-32)); *Harihar*, 2018 WL 6304839, at *3; *Coral Reef of Key Biscayne Developers, Inc.*, 2018 WL 3387679, at *3; *Florencia Park LLC*, 2019 WL 4394002, at *3. Accordingly, accepting the allegations as true, Plaintiff has sufficiently alleged future harm.

Furthermore, Courts within the Eleventh Circuit have often applied a four-factor analysis, known as the *Houston* factors, to determine whether the future injury requirement has been met. These factors include: "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1327 (11th Cir. 2013). Although these factors, which are neither exclusive nor dispositive, are difficult to apply in the online context, they nonetheless provide useful guidance in considering whether future injury has been established. Regardless of these factors, however, "courts must consider the totality of all relevant facts to determine whether a plaintiff faces a real and immediate threat of future injury." *Houston*, 733 F.3d at 1337 n.6.

Here, applying the *Houston* factors and considering the totality of the circumstances, Plaintiff has sufficiently alleged future harm to survive dismissal, in that: (i) the alleged injury is online, making the Website available from any location and that the Website facilitates room reservations (ECF No. 1 ¶¶ 1, 18); (ii) the lack of accessibility information on the Website prevented Plaintiff from being able to reserve an ADA-accessible room at the Hotel (*id.* ¶¶ 19-25);

(iii) Plaintiff "intends to visit the Website soon to avail himself of the goods and services offered" (*id.* ¶ 6); (iv) Plaintiff "plans to avail himself of the goods and services offered to the public at the property, and/or determine whether the property has been made ADA compliant" (*id.*); (v) although Plaintiff visited the Hotel's Website only once before filing suit, Plaintiff is a tester and will undoubtedly visit the Website again to confirm compliance with the ADA (*id.* ¶ 7); (vi) Plaintiff "will visit the Website again soon upon Defendants' compliance with the laws . . . [to] learn about the accessible (and inaccessible) features of the Hotel," guestrooms, and "determine whether he can reserve an accessible guestroom" (*id.* ¶ 25); (vii) "Defendant[s] will continue to discriminate against Plaintiff" and others who access the Website unless the Website is modified (*id.* ¶ 28).

These allegations are sufficient to support a finding of future injury. *See, e.g., Honeywell v. FDG N., LLC*, No. 18-CV-62318-WILLIAMS/VALLE (S.D. Fla. July 17, 2019) (ECF Nos. 13, 16) (granting default judgment and finding that the plaintiff had standing in a similar ADA suit challenging the website's description of the accessibility features of the property); *Kennedy v. Schling LLC,* No. 6:17-CV-74-ORL-22TBS, 2017 WL 6597119, at *5 (M.D. Fla. Nov. 14, 2017) (concluding that a barrier to access through a website is sufficient to meet the injury-in-fact requirement); *see also Coral Reef of Key Biscayne Developers, Inc.*, 2018 WL 3387679, at *3; *Fountain TN*, 2019 WL 4540438, at *2; *Florencia Park LLC*, 2019 WL 4394002, at *3; *Harihar*, 2018 WL 6304839, at *3.

### 2. Mootness

Having found that Plaintiff has standing to bring this ADA action, the Court next addresses Defendants' argument that Plaintiff's ADA claim is moot because Defendants: (i) have deactivated the purportedly offending website; and (ii) are under no obligation to have or maintain a website.

13

(ECF No. 8 at 2, 5).  In response, Plaintiff counters that the Website has not been deactivated and that Defendants still own and operate it.  (ECF No. 9 at 18).  Plaintiff surmises that Defendants "have currently altered the website and intend to take hotel reservations on it in the future."  *Id.*

Defendants' seemingly temporary deactivation of the Website does not moot Plaintiff's ADA claim.  A screenshot of the website, attached to Plaintiff's Response, reflects the following: "Site under maintenance.  We're working Hard!  We'll be Up and Running Soon.  Like us on Facebook for the updates!"  (ECF No. 9-1).

This Court has found that even bringing a website into ADA-compliance does not automatically moot a previously existing claim.  *See Floridian Hotel*, 2018 WL 10601977, at *3 n.3.  Similarly, the Eleventh Circuit has held that an e-tester's case did not become moot simply because defendant entered into a remediation plan as part of a settlement in a separate but identical ADA litigation.  *See generally Haynes v. Hooters of Am., LLC*, 893 F.3d 781 (11th Cir. 2018). These cases support the conclusion that Plaintiff's ADA claim is not moot simply because Defendants have removed the Website.  A contrary conclusion would allow defendants to evade ADA-compliance on their websites by strategically deleting the offending websites when sued, and then reactivating the same websites after dismissal for mootness. Under that circumstance, websites would evade scrutiny under the ADA.

### 3. *Plaintiff Has Sufficiently Stated a Claim Under the ADA as to Defendants*

As noted above, to prevail on a Title III ADA discrimination claim, a plaintiff must sufficiently demonstrate that: (1) he is a disabled individual; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA.  *Norkunas*, 444 F. App'x at 416; *Coral Reef of Key Biscayne Developers, Inc.*, 2018 WL 3387679, at *2, *5; *Shotz*, 256 F.3d at 1079.

Here, Plaintiff alleges that he "is confined to a motorized wheelchair since initially being diagnosed with primary lateral sclerosis and later diagnosed with Parkinson's disease." (ECF No. 1 ¶ 6). Plaintiff also alleges that he requires an accessible hotel and hotel rooms to fully and equally utilize services offered by Defendants, and that he has personal interest in ensuring that hotels comply with federal requirements governing the provision of accessible reservations services. *Id.* ¶ 6. Plaintiff further alleges that he is both a tester and a consumer who wishes to obtain equal access to Defendants' good and services and who is planning to revisit Defendants' Website reservation system to determine whether the property has become complaint. *Id.* ¶¶ 6, 25.

Regarding Defendants, Plaintiff alleges that "Defendant [*sic*] owns, manages, and/or operates the Hotel," which is a place of public accommodation that must comply with the ADA. *Id*. ¶¶ 1-2, 17. Plaintiff further alleges that Defendants operated or maintained a website for the Hotel at IP address www.daytonaparadise770.com. *Id.* ¶¶ 1, 2, 18.

Prior to filing the instant lawsuit, Plaintiff visited the Website "to learn about accessible features [at the Hotel] . . . and to see if he could reserve an accessible room at the Hotel online." *Id.* ¶ 20. During that process, Plaintiff discovered that Defendants' Website did "not provide him with any meaningful accessibility information at all or allow for the reservation of an accessible room (with known accessibility features)" in the same manner as non-accessible ones, in violation of 28 C.F.R. § 36.302(e)(1). *Id.* ¶¶ 13-22, 24. For example, Defendants' online reservation system allegedly failed to disclose physical barriers and the room descriptions fail to provide any specific ADA-related information beyond the phrase ADA. *Id.* ¶¶ 21-22. Moreover, Plaintiff alleges that he was unable to independently ascertain the accessible features of the Hotel . . . by reference to the Website as required by the ADA. *Id.* Lastly, Plaintiff alleges that these violations

discriminated against him and denied him equal access and enjoyment of the Hotel's services offered on the Website. *Id.* ¶ 26.

Accepting these allegations as true, Plaintiff sufficiently alleges the ADA claims. Among other things, Plaintiff alleges that: (i) he has a disability; (ii) Defendant operates an online hotel reservations system within the meaning of the ADA; and (3) Defendant has engaged in illegal disability discrimination by, without limitation, failing to ensure that reservations services offered on its Website are readily accessible to and usable by individuals with disabilities. *Id.* ¶¶ 1, 6, 17-19, 21-22, 26. Additionally, Plaintiff's allegation that he is a "tester" does not deprive him of the ability to pursue injunctive relief for alleged ADA discrimination. *Houston*, 733 F.3d at 1332, 1334 (reasoning that a tester's motive "does not foreclose standing" and "that 'bona fide patron' status is not a prerequisite" for standing).[7] Accordingly, Defendants' Motion to dismiss Plaintiff's claim under Rule 12(b)(6) should be denied.

That said, however, the undersigned agrees with Defendants that Plaintiff has not sufficiently alleged third-party noncompliance. Specifically, 28 C.F.R. § 36.302(e)(1) states, "[a] public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or ***through a third party . . . .***" (Emphasis added). Thus, Defendants can be liable for third-party failures to comply with the requirements of the ADA and the Regulation to which Defendants are subject. *See, e.g.*, *Kennedy v. NILA Investments, LLC*, No. 2:19-CV-090, 2020 WL 3578362 (S.D. Ga. July 1, 2020)

---

[7] In this regard, the Eleventh Circuit has reasoned that: (i) the legal right conferred by § 12182(a) to be free from discrimination based on disability "does not depend on the motive behind [a plaintiff's] attempt to enjoy the facilities;" (ii) "nothing in the statutory language precludes standing for tester plaintiffs;" and (iii) Congress has purposefully "in other anti-discrimination statutes required that a plaintiff have 'bona fide'—as opposed to tester—status." *Houston*, 733 F.3d at 1332-33.

(granting default judgment based on failures of third-party booking websites); *see also Richard*, 2020 WL 2523541, at *3 (noting that although the plaintiff visited the defendant's website only once, the plaintiff's repeated visits to five third-party reservation sites favored finding existence of a future injury).

The Complaint generally alleges that the Regulation, 28 C.F.R. § 36.302(e)(1), also applies to third-party reservation websites like "Orbitz.com, Travelocity.com, Hotels.com, and others" and that other online reservation platforms the Hotel uses allow for reservations to be made online. (ECF No. 1 at 2 n.1, ¶ 18). The Complaint then requests relief from Defendants for the unspecified failures of unnamed third-party online reservation systems. *See, e.g.*, (*Id.* ¶¶ 27-30). These allegations, however, fail to provide sufficient detail to satisfy even the minimum pleading requirements, such as which third-party website(s) Plaintiff visited, when and how often he visited them, what he found in terms of noncompliance, and whether Plaintiff intends to visit these sites in the future. Plaintiff's generalized, conclusory restatement of the law, without more, is insufficient to satisfy even the liberal Rule 12(b)(6) pleading standards. *Cf. Richard*, 2020 WL 2523541, at *3; *NILA Investments, LLC*, 2020 WL 3578362. Accordingly, as to the third-party websites, Defendants' motion to dismiss should be granted, but Plaintiff should be granted leave to amend his Complaint to cure these deficiencies.

### III.    RECOMMENDATION

Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 8) be **GRANTED in part and DENIED in part**, as follows:

(i)    Defendants' Motion should be denied as to Defendants;

(ii)   Defendants' Motion should be granted as to third-party reservation websites.

Nonetheless, Plaintiff should be allowed leave to replead with specificity which (if any) third-party reservation services advertising Defendants' rooms violated the ADA, and how.

Within **fourteen** (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2020); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on August 11, 2020.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Kathleen Williams
　　All Counsel of Record